IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRIPLE DIAMOND ENERGY CORPORATION, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. 3:08-CV-0050-M ECF |
| VENTURE RESEARCH INSTITUTE, INC. and JOHN DOES 1-6, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss filed by Defendant Venture Research Institute, Inc. ("VRI") pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), arguing that the Court lacks personal jurisdiction over VRI and that Plaintiff's claims are barred by the Communications Decency Act ("CDA"), 47 U.S.C. §230. Because the Court concludes that it does not have jurisdiction over VRI, it does not reach the issue of the purported CDA bar.

### BACKGROUND

Plaintiff Triple Diamond Energy Corporation ("Triple Diamond") is a Texas corporation with its principal place of business in Texas. Defendant Venture Research Institute ("VRI") is a California corporation with its principal place of business in California. VRI operates a website, www.vcresearch.info, which contains an interactive open forum ("message board") where private investors can share thoughts, ideas, and opinions on particular investment opportunities and companies. VRI's message board is divided into various forums dedicated to different

subjects, including varying types of legal investments and various fraudulent investment schemes. VRI's evidence demonstrated that recently, 16 of 878 topics on the message board were about oil and gas companies operating in Texas. Among the other topics were oil and gas investments elsewhere.

The postings to VRI's message board are typically provided by third party users not employed by VRI. When VRI representatives post to the message board, their postings are clearly marked: "ADMIN." There is no evidence that VRI employees posted to the message board other than through "ADMIN" postings. VRI contends that it acts as an intermediary to provide an open forum for third parties to publish their thoughts, vent their frustrations, and request information about investments.

Defendants John Does 1-6 are anonymous contributors to the VRI message board, identified as "STEVE," "OILMANLENNY," "KARMA," "EMAIL INPUT," "EMAIL," and "MITCH."

On January 11, 2008, Triple Diamond filed its Complaint, alleging that VRI defamed and disparaged Triple Diamond by publishing on its website false and misleading statements about Triple Diamond in postings by John Does 1-6. The alleged defamatory statements, none of which are marked "ADMIN," include the following, which were posted in the Oil, Gas, Mining forum:

> STEVE: 10-11-07: "Triple scam energy . . . Do they think they will get away with this new scam? The fed's [sic] are all over them. Have fun in the big house . . . They claimed to have managed $75 million of investors monies. They did, into thier [sic] pockets."
>
> OILMANLENNY: 10-10-07: "Yes now the Triple Diamond Energy scam starts—Bob Jent and Chris Jent again—by now I thought they both would be in jail."

> EMAIL INPUT: 10-08-07: "I heard from an ex employee that [Triple Diamond Energy Corp.] is the newest company of the scammers who ran Western Pipeline, Chris Jent and John D. Apple, that was shut down by federal law enforcement agents. They already have a very professional looking websight [sic] www.triplediamondenergy.com to mislead investors to their scam deals just like Western Pipeline."

VRI contends this Court does not have personal jurisdiction over it, because it has not had minimum contacts in the state of Texas. VRI provides undisputed evidence that it does not advertise, conduct business operations, or pay taxes in Texas. VRI claims its website is not specifically targeted to Texas residents, but rather merely hosts a forum open to investors all over the world. The only evidence before the Court of VRI's activities are the maintenance and operation of its message board at issue here. VRI contends an exercise of personal jurisdiction over it in Texas based on its message board would be a violation of the Fourteenth Amendment and traditional notions of fair play and substantial justice.

Triple Diamond argues that the "Oil, Gas, Mining" forum on VRI's website specifically targets people in Texas because, among other things, it provides contact information for Texas state regulators, gives commentary about a Texas securities conference, discusses Texas state law, quotes Texas news stories, and provides an "Ask an Attorney" section on oil and gas law, with answers provided by Mitch Little, a Texas attorney, who is one of VRI's attorneys in this case. Triple Diamond further argues that the exercise of personal jurisdiction over VRI is proper because (1) VRI's website is highly interactive; (2) Plaintiff felt the brunt of the harm from the alleged defamation in Texas; and (3) Texas was the geographic focus of the defamatory statements and the oil, gas, mining forum as a whole.

## ANALYSIS

### I. Standard

The plaintiff bears the burden of establishing that the district court's jurisdiction over a non-resident defendant is proper. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 842, 854 (5th Cir. 2000). When the court rules on a motion to dismiss challenging personal jurisdiction, without conducting an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case of personal jurisdiction. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). Under such circumstances, uncontroverted allegations in a complaint must be taken as true, and conflicts between the facts contained in any proffered affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467,469 (5th Cir. 2002). Because the Texas long-arm statute has been interpreted to extend to the limits of due process, the court need only concern itself with the second inquiry. *Access Telecomm, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 716 (5th Cir. 1999); *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 et seq. (Vernon 1997).

"Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial

justice." *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235 (5th Cir. Feb. 6, 2008).

To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the burden imposed on the defendant, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) and the shared interest of the several states in furthering fundamental substantive social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir.1993) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

There are two bases for a court to find personal jurisdiction: general and specific. General jurisdiction exists "when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Mink v. AAA Development Corp.*, 190 F.3d 333, 336 (5th Cir. 1999) (citations omitted); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984). For specific jurisdiction to exist, the defendant's contacts must be purposefully directed at the forum and the plaintiff's claim must arise out of or be related to those contacts. *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Texas long-arm statute explicitly authorizes personal jurisdiction over a party who "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2).

In determining whether it is proper for a court to exercise jurisdiction over a non-resident defendant who operates an Internet website, the Fifth Circuit has adopted the "sliding scale" test articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997). *See Revell*, 317 F.3d at 470; *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999). The *Zippo* test requires courts determining the propriety of exercising personal jurisdiction to

look to the "nature and quality of the commercial activity that an entity conducts over the Internet." *Mink*, 190 F.3d at 336 (citing *Zippo,* 952 F.Supp. at 1124).

The *Zippo* sliding-scale analysis categorizes Internet use into three levels of interactivity. At one end of the scale, the defendant "merely establishes a passive website that does nothing more than advertise on the Internet." *Mink*, 190 F.3d at 336. Exercising personal jurisdiction based on a passive website is inappropriate. *Id.*; *Revell*, 317 F.3d at 470; *see also Carrot Bunch Co. v. Computer Friends*, 218 F. Supp. 2d 820, 825 (N.D. Tex. 2002) (Buchmeyer, J.). At the opposite end of the spectrum is "a defendant [who] clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet." *Mink*, 190 F.3d at 336 (internal citations and quotations omitted). In cases of such "active" websites, personal jurisdiction over the nonresident defendant is proper. *Id*. Between these two extremes lies the middle ground, where a defendant's website allows a visitor to exchange information with a host computer. *Mink*, 190 F.3d at 336. In such cases "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Id*.

In cases of intentional torts like defamation, the Fifth Circuit also applies the "effects test" of *Calder v. Jones,* 465 U.S. 783 (1984). *Revell,* 317 F.3d at 473. Under the effects test, it is appropriate for a court to exercise specific jurisdiction when (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the resulting harm to the plaintiff; and (3) the defendant expressly aimed his conduct at the forum, so that the forum can be said to be the focal point of the tortious activity. *Id.* at 31. The effects test provides that jurisdiction "may be proper where the effects of a defendant's conduct in one state may cause injury in the forum state," despite the absence of

actual physical contacts or other contacts within the forum state. *Lofton v. Turbine Design, Inc.*, 100 F. Supp. 2d 404, 411 (N.D. Miss. 2000). The Fifth Circuit characterizes the effects test as "but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." *Revell,* 317 F.3d at 473. The Fifth Circuit has recently noted that a determination of personal jurisdiction based solely on the effects test is "rare." *Moncrief Oil Int'l, Inc. v. Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007).

In *Revell v. Lidov,* the Fifth Circuit considered a fact pattern quite similar to that before the Court. In *Revell*, Columbia University and a person not employed by Columbia were sued for defamation over an article posted by the third party on Columbia's journalism school message board. The article alleged a broad conspiracy among members of the Reagan Administration related to the crash of Pan Am Flight 103, and singled out the plaintiff, the Associate Deputy Director of the FBI, for severe criticism. The plaintiff resided in Texas when the article was published.

The Fifth Circuit applied the effects test as part of its analysis, noting that "the sources relied upon and the activities described in an allegedly defamatory publication should in some way connect with the forum if *Calder* is to be invoked." *Id.* at 474. "[A]pplication of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly directed at or directed to the forum state." *Id.* at 475. The Fifth Circuit referenced *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), where the Fourth Circuit held that Virginia could not exercise personal jurisdiction over the Connecticut defendants because their Internet postings did not "manifest an intent to *target* and *focus* on Virginia readers." *Id.* (emphasis in original).

In *Revell*, the Fifth Circuit found that Columbia's bulletin board was "presumably directed at the entire world," not Texans specifically or uniquely. The Fifth Circuit explained

that in "virtually any defamation," the harm of the statement will be felt wherever the subject resides, but that "[a] more direct aim is required" in order for the effects test to be a basis for personal jurisdiction over a non-resident defendant in the state of a plaintiff's residence. The Fifth Circuit concluded that the district court did not have personal jurisdiction over the defendants.

II. **General Jurisdiction**

In its general jurisdiction inquiry, the Fifth Circuit in *Revell* considered the low number of Texas subscribers to the *Columbia Journalism Review*. Here, the general jurisdiction inquiry focuses on whether VRI's entire operations constitute substantial, continuous and systematic contacts in Texas. For the specific jurisdiction inquiry, the Court looks to the operation of VRI's message board.

In *Revell,* the Fifth Circuit categorically rejected a finding of general jurisdiction over Columbia University, explaining that "even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction—in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas." 317 F.3d at 471 (emphasis in original).

Though in a sense a website generates a presence everywhere in the world, the contacts of VRI with Texas are "not in any way 'substantial.'" *Id.* VRI does not conduct business in Texas, and its Internet presence is not sufficient to support jurisdiction here. *See Wilson v. Belin*, 20 F.3d 644, 650-51 (5th Cir. 1994) (finding that general jurisdiction was inappropriate when the defendants "never made all or even a substantial part of their business decisions in

Texas, did not keep bank accounts in Texas, did not hold directors' meetings in Texas, and did not maintain their files in Texas").

The Fifth Circuit in *Revell* noted the stark contrast between the operation of a message board and the activities discussed in the Supreme Court's seminal case on general jurisdiction, *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438 (1952). In *Perkins*, there was general jurisdiction in Ohio over a Phillipine corporation whose president, records, directors' meetings, and bank accounts were temporarily located in Ohio. *Revell,* 317 F.3d at 471. Because VRI's contacts with Texas are not substantial, continuous, or systematic, this Court determines that general jurisdiction does not exist over VRI.

### III. Specific Jurisdiction

Citing *Revell*, Plaintiff argues that in applying the *Zippo* test, the Court should limit its analysis to the oil, gas, mining forum. In *Revell,* the Fifth Circuit focused its analysis on the maintenance of the message board, "the contact out of which the cause of action arises." 317 F.3d at 472. Here, the alleged defamation occurred in the maintenance of the message board, and the Court will thus evaluate the overall content of VRI's message board.

The Court concludes that VRI's Internet activity falls within the middle of the *Zippo* spectrum. Its website allows visitors to interact and exchange information with a host computer and other third party users. As administrator of the website, VRI occasionally posts within the forums to guide the discussions and provide assistance to concerned investors seeking regulatory or legal assistance. The question is whether the level of interactivity and commercial nature of VRI's website are sufficient to warrant an exercise of specific jurisdiction over VRI in Texas.

This case differs from several cases decided within the Fifth Circuit, where specific jurisdiction has been found based on the commercial nature of the subject websites. Where a defendant contracted with Texas residents and sold products and services to Texas residents, specific personal jurisdiction has been found. *See, e.g., Carrot Bunch*, 218 F. Supp. 2d at 826; *American Eyewear, Inc. v. Peeper's Sunglasses & Accessories*, Inc., 106 F. Supp. 2d 895, 901 (N.D. Tex. 2000) (Fitzwater, C.J.); *Powerhouse Prods. v. Widgery,* No. 4:07-cv-071, 2006 U.S. Dist. LEXIS 97417 (E.D. Tex. March 26, 2006).

The Fifth Circuit has stated that "[a]bsent a defendant doing business over the Internet or sufficient interactivity *with residents of the forum state*, we cannot conclude that personal jurisdiction is appropriate." *Mink*, 190 F.3d at 337 (emphasis added). For personal jurisdiction to exist on the basis of an interactive website, it is not enough that a defendant appears to have the potential to interact with, sell products to, and contract with Texas residents. Rather, there must be evidence of such activity having occurred. *People Solutions, Inc. v. People Solutions, Inc.*, No. 3:99-CV-2339-L, 2000 U.S. Dist. LEXIS 10444, 2000 WL 1030619, at *4 (N.D. Tex. July 25, 2000) (Lindsay, J.); *compare Mothers Against Drunk Driving v. DAMMADD, Inc.,* No. 3:02-CV-1712-G, 2003 U.S. Dist. LEXIS 1800, 2003 WL 292162, at *6 (N.D. Tex. Feb. 7, 2003) (Fish, C.J.) (no personal jurisdiction even when evidence showed two purchases from the website by Texas residents). Here, there is no evidence of sales by VRI to individuals in Texas.

The effects test requires this Court to determine whether VRI's alleged defamatory activities were aimed at Texas and whether VRI could have anticipated being haled into court in Texas. There is no proper evidence before the Court that visitors to VRI's website reside in Texas or submitted messages from Texas. The mere possibility of a Texas audience does not establish purposeful availment by VRI of the benefits and protections of Texas, which is

necessary to satisfy due process. *Dymatize Enters. v. Reflex Nutrition Ltd.*, No. 3:07-CV-907-M, 2008 U.S. Dist. LEXIS 3711 (N.D. Tex. Jan. 17, 2008) (Lynn, J.); *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 727 (E.D.Pa. 1999); *see also Luv'n Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 475 (5th Cir. 2006). In other words, "the mere fact that the website contained defamatory information concerning plaintiff does not, absent some supporting evidence, mean that the defendant possessed the intent to target residents of the forum state." *Revell*, 317 F.3d at 473; *Fix My PC, L.L.C. v. N.F.N. Associates, Inc*., 48 F.Supp.2d 640, 644 (N.D.Tex. 1999) (Lindsay, J.).

Triple Diamond urges that when it created a forum for discussing the oil and gas industry, VRI should have anticipated the prospect of being sued in Texas, since Texas is the nation's largest oil-producing state. Additionally, Triple Diamond claims that VRI's "ADMIN" postings on the message board are sufficient to establish specific jurisdiction.[1] Such postings included notices and orders of the Texas Securities Board, discussions of Texas state law, and information on Texas regulatory authorities. Similar submissions were made by VRI about other states. VRI also reported an anonymous tip it had received about a company in Texas, encouraging potential investors to perform due diligence and noting that the tip seemed to be from a disgruntled employee and should be "treated with caution." VRI noted, "We don't care what ANYONE says about an oil company, good or bad. What we want to see is the track record of a) wells drilled, by name, b) how much investors put into these wells, and c) how much investors were paid out on those wells." VRI included commentary about what it meant to be a legitimate oil and gas company and whether that was an appropriate inquiry for an investor, after noting a discussion

---

[1] Without any evidence, Triple Diamond asserts that several of the third party posters are actually employees of VRI posing as anonymous contributors. However, absent evidence, the Court will not assume that the third party submissions are attributable to VRI.

the author had with a Texas state regulator about inquiries into whether particular oil and gas companies were "legitimate."

In the "Ask a Lawyer" subfolder in the Oil, Gas, Mining forum, third party participants may post questions to be answered by an attorney. The subfolder was created when Mitch Little posted a message saying he would "love to contribute content to your site if I could help in any way." Questions that have appeared in the subfolder have included questions about Texas law and about investments in Illinois and Missouri, federal law, and the Uniform Commercial Code. VRI also posted contact information for other attorneys with experience representing investors.

The Court concludes that the general information provided by VRI on its website about Texas law, regulatory activities, and contact information is not a basis for specific jurisdiction over VRI in Texas. VRI merely managed the technical aspects of the message board and provided resource information to investors, with occasional commentary in response to third party postings. Triple Diamond's claims arise not from the "ADMIN's" postings, but from posts made by third party users. As VRI repeatedly reminded its visitors in "ADMIN" postings:

> VRI cannot determine the accuracy of negative information about an oil and gas company, any more than it can determine the accuracy [of] positive information posted online by an anonymous source. The truth of either can only be determined by an examination of the books of an oil company. Each investor should consider the source, and possible motivations for the input, and treat such postings as only part of their own due diligence effort.

Although VRI acted as a moderator of the discussion and, on occasion, offered opinions, which are not the subject of Plaintiff's claims, VRI repeatedly cautioned participants to do their own research and to contact authorities if they suspected wrongdoing.

*Revell* is the only Fifth Circuit opinion considering an Internet message board, and it declined personal jurisdiction based on that message board. Other courts have considered and rejected personal jurisdiction over message board posters, moderators and operators. *See, e.g.,*

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 255 (2d Cir. 2007)(affirming dismissal based on lack of personal jurisdiction when the defendant operated a message board and the defendant himself posted an allegedly libelous message in response to a question on the message board); *Seldon v. Direct Response Tech., Inc.,* No. 03-CIV-5381, 2004 U.S. Dist. LEXIS 5344, *18 (S.D.N.Y. March 31, 2004)(finding no personal jurisdiction over defendant who operated a message board where a third party posted an allegedly defamatory message); *Full Sail, Inc. v. Spevack*, No. 6:03-cv-887-Orl-31JGG, 2003 U.S. Dist. LEXIS 20631, *18 (M.D. Fla. October 21, 2003); *Archer and White, Inc.v . Tishler,* No. 3:03-CV-742-D, 2003 U.S. Dist. LEXIS 19010, *9 (N.D.Tex. October 23, 2003)(Fitzwater, C.J.)(finding no personal jurisdiction over defendant who posted a message on a message board about residents of Texas); *Barrett v. Combs*, 44 F.Supp.2d 717, 727 (E.D.Pa. 1999) (finding that Defendant's posting of allegedly defamatory statements on its webpage and on an online discussion group generated "merely fortuitous" contacts with Texas, which were insufficient to support jurisdiction). The Court is not aware of any cases where courts have exercised personal jurisdiction over website operators based solely on the maintenance of, or postings by third parties on, Internet message boards.

    VRI's website does not allow for commercial dealings and does not target Texas residents as readers or contributors. VRI provides forums about investments, and the inclusion of an oil and gas area, without more, is insufficient to trigger personal jurisdiction in Texas under the effects test. Although VRI posted messages about Texas investments and contacts, the alleged wrongful conduct did not include any of the postings from VRI's "ADMIN" postings. The Court is therefore of the opinion that personal jurisdiction over VRI does not exist. Accordingly, Defendant's Motion to Dismiss is **GRANTED.**

**SO ORDERED.**

**DATED**: July 3, 2008.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS